UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- X
                                         :
                                         :      18cv4093(DLC)
DRONE RACING LEAGUE, INC.,               :
                                         :      OPINION AND ORDER
                   Plaintiff,            :
                                         :
          -v-                            :
                                         :
DR1, LLC,                                :
                                         :
                   Defendant.            :
                                         :
---------------------------------------- X

APPEARANCES:

For the plaintiff:
Jamie A. Levitt
Sarah L. Prutzman
Morrison & Foerster LLP
250 West 55th Street
New York, New York 10019

Madeleine E. Gully
Morrison & Foerster LLP
425 Market Street
San Francisco, California 94105

For the defendants:
Eric Ostroff
Solomon B. Genet
Meland Russin & Budwick, P.A.
200 South Biscayne Boulevard, Suite 3200
Miami, Florida 33131

Justin B. Perri
Blackstone Law Group LLP
1201 Broadway, Suite 904A
New York, New York 100021

DENISE COTE, District Judge:

Defendant DR1 LLC ("DR1") has moved to dismiss plaintiff Drone Racing League's first amended complaint ("FAC").  For the reasons set forth below, the motion is granted in part.

**Background**

The following facts are drawn from the FAC and documents incorporated in it by reference.  Plaintiff Drone Racing League, Inc. ("DRL") is in the business of developing and promoting its independent, professional drone racing circuit.  Drone racing involves piloting remote controlled aerial drones through obstacle courses with the goal of completing the course as quickly as possible.  Spectators can watch the race from the perspective of the drones, which are equipped with cameras, or view the entire course using cameras that are mounted around the course.  DRL produces and promotes televised drone racing events which are monetized through sponsorships, network media sales, licensed consumer products, and broadcast advertisements.  DRL was founded in 2015 and launched in January 2016.  It held its first drone races in 2016.

DRL refers to itself in business communications, broadcasting, and promotional and marketing materials as "DRL."  DRL owns several trademark registrations for its stylized "DRL" Logo and the letters "DRL" (collectively, "the DRL Marks").  The DRL Marks are featured prominently on signage on DRL's drone

2

racing courses, on apparel worn by the pilots, and in television and internet broadcasts of DRL's races.

Defendant DR1 is similarly engaged in the business of conducting and promoting drone races. It was launched in 2016 and conducted its first drone race, the "DR1 Mountain Dew Invitational" in June 2016. DR1 first broadcast its drone races online and on the Discovery Channel in August 2016. DR1 held a second drone racing series in August 2017. This series, titled "the DHL Champions Series fueled by Mountain Dew," was broadcast on CBS and streamed online.[1]

DR1 refers to itself in public communications as "DR1" and uses a logo that consists of the stylized words "DR1 Racing." DR1 has filed several trademark applications for "DR1" and the DR1 logo (collectively, "the DR1 Marks"). The DR1 Marks are prominently displayed during DR1's drone races.

DRL alleges that DR1 used the DRL Marks side by side with the DR1 marks in a slide presentation sent to one of DRL's corporate sponsors. The slide presentation included information about drone racing and was apparently intended to convey a side by side comparison of the viewership numbers of DRL and DR1. DRL alleges that the slide presentation misrepresented the number of viewers of DRL's 2017 championship race, and that it

---

[1] "DHL" apparently refers to the delivery services company, which was a sponsor of the series.

misleadingly failed to indicate that the CBS broadcast of DR1's "Champions Series" was paid programming.

DRL alleges that the DRL Marks and the DR1 marks are confusingly similar and cites several examples of alleged confusion of the marks. In November 2017, an online article published by Silicon Republic confused DRL and DR1 when it incorrectly stated that "Spike Island in Cork is home to one of the tracks in Drone Racing League." In fact, the location was home to a DR1 course, not a DRL course. The author of the article later published a correction. The CEO and founder of DR1, Brad Foxhoven, was interviewed for the article and was quoted referring to DR1 as "DRL," stating: "What makes DRL unique is that our races are outside, in these extraordinary iconic settings."

On November 4, 2017, DR1 aired an outdoor drone racing event on CBS, which prominently featured the DR1 marks. DRL alleges that, following the broadcast, a number of potential investors, advertisers, and consumers told DRL employees that they had seen DRL's outdoor race on CBS, when the outdoor race on CBS was in fact held by DR1.

DRL filed the instant action on May 7, 2018, asserting claims for trademark infringement, false designation of origin, and false advertising under the Lanham Act, as well as claims for deceptive trade practices under New York General Business

4

Law § 349, false advertising under New York General Business Law § 350, trademark infringement under New York common law, unfair competition under New York common law, and for entry of an order and judgment "refusing DR1's pending U.S. trademark applications" under 15 U.S.C. § 1119.[2]

DR1 moved to dismiss DRL's complaint on June 14, 2018. DRL filed its FAC on July 13. DR1 renewed its motion to dismiss the FAC on August 3. That motion became fully submitted on August 24.

## Discussion

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Cohen v. Rosicki, Rosicki & Assocs., 897 F.3d 75, 80 (2d Cir. 2018) (citation omitted). A claim to relief is plausible when the factual allegations in a complaint "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Progressive Credit Union v. City of New York, 889 F.3d 40, 48 (2d Cir. 2018) (citation omitted).

---

[2] 15 U.S.C. § 1119 authorizes a court to "determine the right to registration . . . with respect to the registrations of any party to [an action involving a registered mark]." DRL appears to seek a decree that DR1's trademarks are not entitled to registration and an order directing the United States Patent and Trademark Office to deny DR1's applications for trademark registration.

5

"[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Carlin v. Davidson Fink LLP, 852 F.3d 207, 212 (2d Cir. 2017). When a party moves to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6), Fed. R. Civ. P., a court must "accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor." LaFaro v. N.Y. Cardiothoracic Grp., PLLC, 570 F.3d 471, 475 (2d Cir. 2009) (citation omitted). "A complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." Nicosia v. Amazon.com, Inc., 834 F.3d 220, 230 (2d Cir. 2016) (citation omitted).

**I. DRL's Trademark Claims**

"The test for trademark infringement looks first to whether the plaintiff's mark is entitled to protection, and second to whether defendant's use of the mark is likely to cause consumers confusion as to the origin or sponsorship of the defendant's goods." Excelled Sheepskin & Leather Coat Corp. v. Oregon Brewing Co., 897 F.3d 413, 417 (2d Cir. 2018) (citation omitted).[3] The registration of a trademark is "prima facie

---

[3] Causes of action for trademark infringement under the Lanham Act and New York common law "are composed of the same elements." Tiffany (NJ) Inc. v. eBay Inc., 600 F.3d 93, 101 n.6 (2d Cir. 2010).

6

evidence of the validity of the registered mark . . . ." 15 U.S.C. § 1115(a); Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc., 192 F.3d 337, 345 (2d Cir. 1999). Accordingly, "[i]f a mark has been registered with the United States Patent and Trademark Office, the defendants in an infringement action . . . bear the burden of overcoming the presumption that the mark is not generic." Reese Pub'g Co. Inc. v. Hampton Int'l Commc'ns, Inc., 620 F.2d 7, 11 (2d Cir. 1980).

To determine whether there is a likelihood of confusion between two marks, courts in this Circuit refer to the eight familiar Polaroid factors. These factors are:

> [1] the strength of the senior user's mark, [2] the similarity of the parties' marks, [3] the proximity of the parties' areas of commerce, [4] the likelihood that the senior user will bridge the gap separating their areas of activity, [5] the existence of actual consumer confusion, [6] whether the junior user acted in bad faith or was otherwise reprehensible in adopting the mark, [7] the quality of the junior user's product, and [8] the sophistication of the relevant consumer group.

Guthrie Healthcare System v. ContextMedia, Inc., 826 F.3d 27, 37 (2d Cir. 2016) (citing Polaroid Corp. v. Polarad Electronics Corp., 287 F.2d 492, 495 (2d Cir. 1961)) (other citations omitted). "The application of the Polaroid test is not mechanical, but rather, focuses on the ultimate question of whether, looking at the products in their totality, consumers are likely to be confused." Starbucks Corp. v. Wolfe's Borough

7

Coffee, Inc., 588 F.3d 97, 115 (2d Cir. 2009) (citation omitted). "The pertinence of individual factors varies with the facts of the particular case. Courts should not treat any one factor as dispositive, nor apply a mechanical process awarding judgment to the party with the greatest number of factors weighing in its favor." Guthrie Healthcare System, 826 F.3d at 37 (citation omitted). Although

> [n]ormally, the likelihood of confusion is a factual question, centering on the probable reactions of prospective purchases of the parties' goods, . . . [c]laims . . . may be dismissed as a matter of law where the court is satisfied that the products or marks are so dissimilar that no question of fact is presented.

Pirone v. MacMillan, Inc., 894 F.2d 579, 584 (2d Cir. 1990) (citation omitted) (granting motion for summary judgment).

**A. The DRL and DR1 Logos**

DRL has registered the DRL logo and this logo is thus entitled to a presumption of validity. DR1 does not contest the validity of the DRL logo trademark. The only remaining issue with respect to the logo is the likelihood of confusion, as determined by application of the Polaroid factors. DR1 concedes that DRL has alleged facts sufficient to show the strength of the DRL Marks, proximity and quality of services, and consumer sophistication -- that is, the first, third, seventh, and eighth Polaroid factors. The fifth factor -- bridging the gap -- is not applicable, as it is already addressed by the factor

8

addressed to the proximity of the parties' areas of commerce. Principally at issue are the similarity of the marks, the existence of actual consumer confusion, and bad faith on the part of DR1 -- the second, fifth, and sixth Polaroid factors.

"Of salient importance among the Polaroid factors is the 'similarity of the marks' test, which attempts to discern whether the similarity of the marks is likely to cause confusion among potential customers." Malletier v. Burlington Coat Factory Warehouse Corp., 426 F.3d 532, 537 (2d Cir. 2005) (citation omitted). "[I]n an appropriate case, the 'similarity of the marks' factor can be dispositive and will warrant summary judgment for an infringement defendant if the court is satisfied that the marks are so dissimilar that no question of fact is presented." Nabisco v. Warner-Lambert Co., 220 F.3d 43, 46 (2d Cir. 2000) (citation omitted). When conducting this analysis, courts must analyze the marks "when viewed sequentially in the context of the marketplace" rather than in a "side-by-side comparison." Louis Vuitton Malletier v. Dooney & Bourke, Inc., 454 F.3d 108, 117 (2d Cir. 2006). "[C]ourts must analyze the mark's overall impression on a consumer, considering the context in which the marks are displayed and the totality of factors that could cause confusion among prospective purchasers." Burlington Coat Factory, 426 F.3d at 537 (citation omitted). "[T]he crux of the issue is whether the similarity is likely to

9

cause confusion among numerous customers who are ordinarily prudent." Savin Corp. v. Savin. Grp., 391 F.3d 439, 458 (2d Cir. 2004) (citation omitted).

A visual inspection of the two logos, which were included in the FAC and are reproduced below, reveals them to be dissimilar.

 

The logos use different typefaces and different shapes. The DR1 logo adds visual elements that the DRL logo does not. DRL's conclusory allegations about the logos' similarity are also belied by the registration record for the DRL logo, which is incorporated by reference in the complaint. See DiFolco v. MSNBC Cable LLC, 622 F.3d 104, 111 (2d Cir. 2010). Specifically, DRL's assertion that the two logos are both orange is contradicted by the DRL logo's registration, which describes it as red. Indeed, it appears that the only substantial similarity between the two marks is that they use two of the same letters, "D" and "R". Whether viewed side-by-side or sequentially, the clear visual differences between them make it unlikely that prospective purchasers of either entity's services will be confused by the two marks. Because the similarity of

the marks is only one of the eight Polaroid factors, however, the motion to dismiss DRL's trademark claims with respect to the DRL logo will be denied. The FAC pleads a plausible claim of consumer confusion, albeit barely.

**B. The Letters "DRL" and "DR1"**

DR1 challenges the validity of DRL's trademark for the letters "DRL" on the basis that the mark is generic and therefore invalid. "Trademarks, whether registered or unregistered, are grouped for purposes of analysis into four categories of increasing inherent distinctiveness: generic, descriptive, suggestive, and arbitrary or fanciful." Cross Commerce Media, Inc. v. Collective, Inc., 841 F.3d 155, 160 (2d Cir. 2016). "At the bottom of the ladder is the generic mark, which is understood as referring to the genus of which the particular product is a species. A generic mark cannot become a valid trademark, possessing the right to exclude others from its use." Guthrie Healthcare System, 826 F.3d at 41 (citation omitted). In general, "the classification of a mark is a factual question, and that question turns on how the purchasing public views the mark." Courtenay Comms. Corp. v. Hall, 334 F.3d 210, 215 (2d Cir. 2003) (citation omitted).

DR1 asserts that the mark "DRL" is generic because it is merely an abbreviation of the generic term "drone racing league." That determination is not appropriately made at this

11

stage.  DRL has pleaded that it owns a registration for the mark "DRL."  "A certificate of registration with the PTO is prima facie evidence that the mark is registered and valid (i.e., protectible), that the registrant owns the mark, and that the registrant has the exclusive right to use the mark in commerce." Lane Capital Mgmt., 192 F.3d at 345.  DRL's registration of its trademark entitles it to a presumption of validity, which satisfies its pleading burden with respect to the validity prong of the trademark infringement analysis.

DR1 cites CES Pub. Corp. v. St. Regis Publications, Inc., 531 F.2d 11 (2d Cir. 1975), for the proposition that a court may, at the motion to dismiss stage, dismiss an action for trademark infringement on the ground that the mark is generic as a matter of law.  The mark at issue in that case, however, was registered only on the Supplemental Register, and therefore did not enjoy the presumption of validity that attaches to marks that have been registered on the Principal Register.  Id. at 12; 15 U.S.C. § 1094.

DR1 does not challenge DRL's assertion that the letters "DRL" and "DR1" are sufficiently similar to create a likelihood of confusion.  Because DRL has adequately plead that the "DRL" mark is entitled to protection, and that there is a likelihood of confusion between the letters "DRL" and "DR1," DRL may

proceed on its trademark claims with respect to the letters "DRL."

**II. New York Common Law Unfair Competition**

"We analyze claims under New York's unfair competition [law] in a similar fashion to how we analyze claims under the Lanham Act." Louis Vuitton Malletier, 454 F.3d at 119. In addition to likelihood of confusion, however, "[a] plaintiff claiming unfair competition under New York law must show that the defendant acted in bad faith." Empresa Cubana del Tabaco v. Culbro Corp., 399 F.3d 462, 485 (2d Cir. 2005). "In determining a defendant's intent, actual or constructive knowledge of the prior user's mark or dress may indicate bad faith," but not necessarily. Paddington Corp. v. Attiki Importers & Distributors, Inc., 996 F.2d 577, 586 (2d Cir. 1993) (citation omitted). "Although deliberate copying may indicate that the defendant acted in bad faith, the District Court is not required to draw that inference where there is evidence to the contrary." Starbucks Corp., 588 F.3d at 118 (citation omitted). "[T]he intent to compete by imitating the successful features of another's product is vastly different from the intent to deceive purchasers as to the source of the product." Nora Beverages, Inc. v. Perrier Group of Am., Inc., 269 F.3d 114, 124 (2d Cir. 2001) (citation omitted). DRL has plausibly alleged bad faith.

DRL's unfair competition claim under New York common law therefore survives.

**III. False Advertising**

DRL contends that DR1 engaged in false advertising when it misstated information about DRL's viewership in a presentation to potential sponsors.[4] Section 43(a) of the Lanham Act provides redress against any person who "in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities." 15 U.S.C. § 1125(a)(1)(B). Courts in this circuit apply a three-part test to determine whether a statement constitutes "commercial advertising or promotion":

> The statement must be (1) commercial speech; (2) for the purpose of influencing consumers to buy defendant's goods or services; and (3) although representations less formal than those made as part of a classic advertising campaign may suffice, they must be disseminated sufficiently to the relevant purchasing public.

---

[4] DRL does not directly oppose DR1's motion to dismiss its federal false advertising claims under Section 43(a) of the Lanham Act. The arguments that DRL makes in support of its false advertising claim under New York state law, however, are also applicable to its federal false advertising claims. In any event, DRL has not stated a claim for false advertising under federal or state law in connection with the alleged slide presentation because it has not plausibly alleged that the presentation was "consumer oriented."

14

Boule v. Hutton, 328 F.3d 84, 90-91 (2d Cir. 2003) (citation omitted).

The slide presentation alleged in the FAC, upon which DRL bases its false advertising claim, was not "commercial advertising or promotion" within the meaning of Section 43(a). Although some potential consumers of DR1's products might have been among the employees of the sponsor who viewed the slide presentation, the presentation was not meant to communicate with those individuals as consumers. The purpose of the slide presentation was not to "influenc[e] consumers to buy [DR1's] goods or services." Boule, 328 F.3d at 90. Rather, it is clear from the face of the FAC that the purpose was to influence the viewers of the presentation to sponsor DR1 rather than DRL.

Further, even accepting as true that some potential consumers were among the employees of the sponsor that viewed the presentation, DRL has not plausibly alleged that the presentation was "disseminated sufficiently to the purchasing public." Viewing the facts alleged in the light most favorable to DRL, a single slide presentation viewed by an unknown number of employees of a single company does not meet the threshold for public dissemination. DRL has therefore failed to state a claim for false advertising under the Lanham Act.

DRL further contends that DR1 is liable for false advertising because its CEO referred to DR1 as "DRL" in an

15

interview reported in Silicon Republic.  DR1 does not address this contention in its motion to dismiss.  Accordingly, DRL's claim for false advertising under Section 43(a) of the Lanham Act survives with respect to the alleged statement of DR1's CEO.

**IV. Deceptive Trade Practices and False Advertising Under New York General Business Law §§ 349 and 350**

DRL has failed to state a claim for Deceptive Trade Practices under New York General Business Law § 349 or False Advertising under New York General Business Law § 350 with respect to the slide presentation.  The essential elements of these two claims are the same.  In order to state a claim under either of these statutes, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice."  City of New York v. Smokes-Spirits.com, Inc., 12 N.Y.3d 616, 621 (2009).  "As a threshold matter, in order to satisfy General Business Law § 349 plaintiffs' claims must be predicated on a deceptive act or practice that is consumer oriented."  Carlson v. Am. Int'l Grp., Inc., 30 N.Y.3d 288, 309 (2017) (citation omitted).  For substantially the same reasons described above, DRL has failed to allege that DR1 was engaged in "consumer-oriented conduct" when it made the allegedly false statements in the slide presentation to a potential sponsor.  The failure to

16

meet this threshold pleading burden is fatal to DRL's claims under both Section 349 and Section 350.

DR1 has not addressed the alleged misstatement of its CEO in its motion to dismiss DRL's claims under §§ 349 and 350 with respect to the slide presentation. Accordingly, DRL's claims under those provisions survive to the extent that they are predicated upon that statement.

## Conclusion

DR1's motion to dismiss is denied with respect to Counts 1, 2, 6, 7, and 8 of the FAC. The motion to dismiss the remaining claims is granted to the extent those claims rely on the alleged slide presentation, but denied to the extent that those claims rely on the alleged misstatement of DR1's CEO.

Dated: New York, New York
November 26, 2018

_____
DENISE COTE
United States District Judge